This case presents two issues for our review: whether the trial court erred in (1) instructing the jury on the burden of proof necessary for an award of punitive damages, and (2) denying the defendants' motions for JNOV and for new trial. We affirm.
In November 1988, the plaintiff, Aubrey Adams, was employed by Marcrum Management ("Marcrum") as a maintenance man for an apartment complex in Athens, Alabama. While moving a refrigerator from a storage shed, Adams slipped and the refrigerator fell on him, injuring two vertebrae in his back. Adams was hospitalized immediately. Initially, Adams experienced paralysis in both legs; however, while in the hospital, he regained use of his right leg and partial use of his left leg.
Approximately six weeks after his injury, and after he had been released from the hospital, Adams contacted CIGNA Insurance Company ("CIGNA"), Marcrum's worker's compensation carrier, about receiving worker's compensation benefits. CIGNA began paying Adams temporary benefits and then hired International Rehabilitation Associates, Inc., doing business as Intracorp ("Intracorp"), to evaluate Adams's rehabilitation potential. Gerald Childrey, CIGNA's claims adjuster assigned to Adams's case, testified in deposition, which was read at trial, that he retained Intracorp's services to help him decide how to handle Adams's claim. The employment relationship between CIGNA and Intracorp was evidenced in a written "Request for Service," which specifically requested that Intracorp perform "aggressive medical management" and a full initial evaluation, including contacts with Adams, his employer, and his physician.[1] *Page 1209 
Tammy Bradly was the rehabilitation specialist initially assigned to Adams's case. On January 27, 1989, Bradly wrote to Jimmy Alexander, Adams's attorney, asking permission to visit Adams to begin evaluating his rehabilitation potential and asking for a signed consent form. Alexander responded on February 2, 1989, by a letter requesting a complete description of Intracorp's services that Intracorp planned on performing for Adams, a description of Bradly's credentials, a listing of the governmental agency that licensed Bradly, an explanation and full disclosure of any relationship between Intracorp and CIGNA, and a copy of the consent form with an explanation of why it was necessary. Bradly forwarded a copy of Alexander's letter to Childrey. On February 9, 1989, CIGNA suspended Adams's temporary disability benefits for "refusal to accept rehabilitation." On February 10, 1989, Bradly responded to Alexander's February 2 letter. She stated:
 "This letter is in response to your February 2, 1989 request for additional information regarding Intracorp and myself. In regard to questions 1 [description of services Intracorp planned to perform for Adams], 2 [Bradly's credentials] and 5 [consent form], please see the enclosures.
 "3. I am a Certified Counselor Associate licensed by the Alabama Board of Examiners in Counseling.
 "4. Intracorp is a wholly owned subsidiary of Cigna Corporation with no contractual agreement. Intracorp services are paid for on an hourly billing basis.
 "5. The information release forms enclosed are necessary to secure medical records pertinent to the injury and for permission to share such with physicians, therapists, etc., involved in the treatment of that injury as well as the insurance adjustor."
(Emphasis added.)
The Intracorp brochure that Bradly enclosed with her reply letter read:
"INTRACORP
"Who we are
 "Intracorp is a professional, private, service organization that specializes in assisting the injured person to recover as fully and quickly as possible and help with return to a satisfying and productive lifestyle. We employ Rehabilitation Specialists with professional backgrounds as Registered Nurses and Rehabilitation Counselors nationwide.
 "Our services are retained, on behalf of an individual, by insurance companies and employers. There is no cost for our services to the people that we help. Insurance companies and employers are concerned that the injured person receives the best possible medical care and explores all potential options for return to employment. We provide the professional assistance necessary to help people through what can often be a difficult period in their lives.
"Why Intracorp rehabilitation services?
 "Each case referred to Intracorp is assigned to one of our Rehabilitation Specialists — a highly trained professional capable of evaluating all the needs and concerns related to an injury. The Rehabilitation Specialist works with the person and his or her family to identify any areas of concern and to determine whether rehabilitation services can be of benefit at this point in the recovery process. We will share our finding with the insurance company or employer that retained us, and upon approval, we will formulate a rehabilitation plan and work closely with this person to resolve his or her situation in a positive manner. Sometimes our involvement will cover all areas of recovery and eventual return to work, and sometimes we will be involved with specific areas only.
 "The extent of our involvement with any individual case is determined by the request of the party that retained our services, and this request is most often related to the limits and types of available insurance coverage. Also, the level and areas of our involvement will always be related to the individual needs of each person and his or her life situation. *Page 1210 
"What we do
 "Some of the things that we can do to help an injured person to recover are:
 " * Interpret medical information, such as prescription taking directions and physical therapy instructions
 " * Coordinate the activities and communication among all involved health care professionals
 " * Assure that the medical treatment plan will secure the best possible recovery in the shortest period of time
 " * Assist the person to take control of their recovery and to make decisions that will positively affect their futures
 " * Provide professional advice and assistance to develop a rehabilitation plan of action that will attain positive results as soon as possible
 " * Work with employers to facilitate safe return to work at the earliest possible time, or work with other involved parties to return the individual to pre-injury status (school, independent status in the home, etc.)
 "The Rehabilitation Specialist assigned to your case will be glad to answer any remaining questions you might have about Intracorp and our rehabilitation services. We're here to help, and we'd like you and your family to be as comfortable as possible with our involvement in your recovery."
In March 1989, Adams sued Marcrum for worker's compensation benefits, because CIGNA had suspended his benefits. Adams's attorney, Alexander, hired Patsy Bramlett to assess Adams's vocational disability rating for the worker's compensation lawsuit. During the vocational disability testing, Adams told Bramlett that he expected to be put in a rehabilitation program through Intracorp in the near future. Adams also told his personal physician that he expected to be put into a rehabilitation program through Intracorp in the near future.
In July 1989, Bradly met with Adams to perform an initial evaluation. Adams specifically asked Bradly whose interest she was there to serve, and she replied that she served the insurance company's interest at that point, but that after their initial meeting she would represent his interest. Bradly performed no further services for Adams.
In August 1989, Adams and CIGNA settled the worker's compensation lawsuit. Part of that settlement called for CIGNA to pay for Adams's rehabilitation and medical expense. Later that same month, Bradly was promoted, and Norma Stricklin was assigned to Adams's case; however, before turning over Adams's case to Stricklin, Bradly requested and received a signed consent form from Adams. Stricklin wrote to Alexander in October 1989 and asked for another signed consent form, and another was sent to her.
In January 1990, Adams's case was again reassigned to another rehabilitation specialist. Adams sued Intracorp, Bradly, and Stricklin, alleging negligence in the performance (or nonperformance) of their professional duties, wantonness, fraud, and intentional interference with a business relationship. The defendants filed a motion to dismiss, which was denied by the trial court. Adams filed a motion to dismiss Stricklin as a party defendant; the trial court granted that motion. The case was then presented before a jury. At the close of Adams's case, Intracorp and Bradly moved for a directed verdict; the trial court directed a verdict as to Adams's interference with business relationship and wantonness claims, but denied the motion as to negligence and fraud. After the defendants presented their evidence, the trial court again denied their motion for directed verdict. The case was submitted to the jury on the negligence cause of action and on a fraud by suppression cause of action. The jury returned a verdict for Adams and against both Intracorp and Bradly, assessing $80,000 in compensatory damages and $75,000 in punitive damages. The trial court entered a judgment consistent with the jury's verdict. Intracorp and Bradly filed motions for a JNOV and for a new trial; the trial court denied these motions. Intracorp and Bradly appeal.
 I. The Punitive Damages Instruction Issue
Intracorp and Bradly first argue that the trial court reversibly erred in its *Page 1211 
instruction to the jury on the burden of proof required for assessment of punitive damages. While we agree that the trial court erred in its charge, we conclude that Intracorp and Bradly failed to object to the court's curative instruction, and, thus, that they failed to preserve this issue for our review.
The record reveals that the trial court instructed the jury on the burden of proof required for assessment of punitive damages as follows: "Now, the plaintiff is entitled to recover punitive damages in a case where the jury is reasonablysatisfied from the evidence that the fraud not only took place but that the fraud was conducted or happened with either malice or wantonness or some gross behavior." (R. at 348; emphasis supplied.) Defense counsel objected to this charge after the entire oral charge was completed, by stating, "We would also object to that portion of the charge which addressed the burden of proof, proving punitive damages as being only a burden of reasonable satisfaction and not clear and convincing evidence." (R. at 357.) The trial court overruled the defendants' objection.
However, after the jury had retired to the deliberation room, and had been reinstructed by the trial court on certain matters, the issue was raised again. The record reads:
 "MS. FERGUSON [counsel for the defendants]: I would like the record to show that the Defendants restate their same objections to the charge on suppression and punitive damages.
"THE COURT: All right.
 "MR. ALEXANDER [counsel for the plaintiff]: When the jury came back out they were asking about punitive damages, and I'm not sure that we got you to include the words that it must be by clear and convincing evidence, and we would ask that Your Honor recharge them in accordance with 11.03 [Alabama Pattern Jury Instructions] and let them go back and —
"THE COURT: What do you say?
 "MS. FERGUSON: I think that the jury was charged on the wrong burden of proof on punitive damages. The jury has already indicated that they have their verdict. I don't know that it can be corrected. I don't know that you can charge them correctly on the burden, the substantially greater burden. They might have some questions about it. I think they need to be recharged again.
 "MR. ALEXANDER: The Court hasn't accepted the verdict.
". . . .
 "MR. ALEXANDER: But I think it would be perfectly fine to give it now and let them go back.
 "MS. FERGUSON: We would, I guess, insist that the jury by instructed on the correct burden. They have already arrived at [a] verdict based upon your previous charge.
 "THE COURT: Well, I guess what I am saying is if I bring them in and charge them at this point in time and send them out, is that going to be objectionable?
 "MS. FERGUSON: Yes, Your Honor. I believe it would be objectionable, but I feel like I'm between a rock and a hard place. They've been charged wrong twice now and are bringing in a verdict. Given the new charge I don't know that they are going to be able to look at the evidence in light of the new burden. I don't know that I have a choice though except to have them recharged under the correct burden."
(R. at 364-66.)
After this colloquy, the trial court gave a curative instruction that restated the burden of proof for assessing punitive damages as "clear and convincing evidence." Of great importance, however, is the absence of any objection to the trial court's curative instruction.
This Court acknowledges that, generally, a trial court must specifically withdraw an erroneous instruction, and then give the jury a correct instruction, to cure the giving of the erroneous instruction. Inter-Ocean Casualty Co. v. Holston,271 Ala. 251, 122 So.2d 774 (1960), Alabama Farm Bur. Mut. Cas.Ins. Co. v. Carswell, 374 So.2d 250 (Ala. 1979), and Stewart v.Clayton, 502 So.2d 767 (Ala.Civ.App. 1986). *Page 1212 
However, where no objection to the corrected instruction, or to the court's failure to specifically withdraw the erroneous instruction, is made, no error is preserved for our review.Bush v. Alabama Farm Bur. Mut. Cas. Ins. Co., 576 So.2d 175
(Ala. 1991); Rule 51, Ala.R.Civ.P. No error was preserved in this case because the defendants failed to object to the corrected instruction or to the trial court's failure to specifically withdraw the erroneous charge.
 II. The JNOV and New Trial Issue
Intracorp and Bradly argue that the trial court erred in denying their motions for JNOV and for new trial because, they argue, Adams failed to properly plead or sufficiently prove his fraud cause of action. We address each contention in turn.
 A. Failure to Properly Plead
Intracorp and Bradly argue that they were not given adequate notice that fraud by suppression would be an issue in the case, and thus, that a JNOV or new trial should have been granted. We disagree, because we find that the issue of fraud by suppression was tried by the implied consent of the parties, and that the complaint was amended to conform to the evidence.
It is undisputed that Adams did not plead fraud by suppression in his complaint. However, Adams did specifically plead fraud by misrepresentation. After the close of all the evidence the following discussion occurred:
 "MS. FERGUSON: We would move that the Plaintiff's claim for negligence be dismissed and that the Plaintiff's claim for fraud be dismissed as well, particularly, with respect to the fraud issue.
". . . .
 "THE COURT: Well, I don't know that you've got any evidence of misrepresentation. It seems to me the evidence is of an omission of stating something rather than a misrepresentation.
 "It seems to me what you've shown, if anything, is that he was not advised, not that there was a misstatement. A failure to disclose is all I see.
 "MR. ALEXANDER: Well, that's a basis for fraud, but —
"THE COURT: Yes. It is a basis for fraud.
"MR. ALEXANDER: Yes, sir.
 "THE COURT: I mean, that's fraud, but I'm just —
 "MS. FERGUSON: Your Honor, with respect to the suppression aspect of that, I think that the fraud claim has been premised on certain representations being made as to what services would be available, and those services were never rendered.
". . . .
 "MR. ALEXANDER: Yes, sir. They [Intracorp and Bradly] represented that they were providing, quote, professional rehabilitation services. These things right here that are stated in Defendant's Exhibit Number Thirteen [the Intracorp brochure, reprinted above] and that was basically a false representation. They represented that they were providing highly trained services to help him [Adams] return to meaningful employment, and that was a false representation because they did not — they suppressed from him knowledge that they were limited by that assignment form [the 'Request for Service']. They never gave him a copy of the assignment form.
 "THE COURT: That's what I'm saying. Here you're going into — you are really going into suppression.
"MR. ALEXANDER: Yes, sir.
". . . .
 "MS. FERGUSON: Your Honor, may I address the suppression issue one more time?
"THE COURT: Yes.
 "MS. FERGUSON: In the Plaintiff's complaint they allege that there were misrepresentations made, and in the pretrial order they also state that there were misrepresentations made. Nowhere have they alleged that any material fact was suppressed by the Defendants, and it is upon those allegations in *Page 1213 
the complaint and the pre-trial order that we have proceeded through this trial.
 "MR. ALEXANDER: Well, we said that they represented that they were providing rehabilitation services, including highly trained professional services, capable of evaluating all of his needs, and in doing that, what we are saying is that they suppressed from us that they were not, in fact, doing that.
"MS. FERGUSON: Well, Your Honor —
 "MR. ALEXANDER: We may not have used the word, suppression, but it amounts to the same thing, and of course, suppression is one of the manners by which you perpetrate fraud. It could be by an active statement or it can be by suppression.
 "MS. FERGUSON: Your Honor, the term, though, 'misrepresentation' implies that a statement was made, and under rules of pleading, if he's going to allege that they suppressed something, he must have pleaded that with much more specificity than general terms of misrepresentation, which I would contend indicates that a statement was made.
 "THE COURT: Well, let me put it to you this way. You know, in this day and age everybody takes everybody's deposition. I don't know that there was anybody that we didn't know who was going to testify. We're just not in a notice pleading thing. Now, I understood that we had a fraud count, and I think you have correctly stated that the Plaintiff contends that the Defendant Intracorp represented to Plaintiff that the Defendants were providing rehabilitation services for Plaintiff, including highly trained professional services capable of evaluating all of the Plaintiff's needs and relating to the Plaintiff's injuries. Plaintiff claims that said representations were falsely made or without knowledge of the true facts, that the Plaintiff relied on said representations, and thereby, devoted time and incurred expenses in attending interview sessions of the Plaintiff. He contends that the Defendants prevented him from securing adequate and necessary rehabilitation services and prevented him from attaining positive results as soon as possible.
 "I don't think that failure to disclose is mentioned in here, but I'm not going to dismiss the fraud count on that basis, because I think that the recurring theme that the Plaintiff has tried to establish is that he wasn't advised of that [the limited undertaking of Intracorp], and I think the Defendant was advised of that [that Plaintiff was proceeding under suppression], and I think that it's just a species of fraud.
 "THE COURT: Well, I'll deny the motion for a directed verdict at this time, and [the case] will go to the jury on negligence and fraud and the plea of the Defendant of contributory negligence."
(R. at 326-35; emphasis supplied.)
Rule 15(b), Ala.R.Civ.P., states, in pertinent part:
 "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in the maintaining of his action or defense on the merits. . . . The court is to be liberal in granting permission to amend when justice so requires."
Also, this Court has said that implied consent of the parties can be inferred from an opposing party's failure to object to introduction of evidence raising the disputed issue initially.Bischoff v. Thomasson, 400 So.2d 359 (Ala. 1981), Hawk v.Bavarian *Page 1214 Motor Works, 342 So.2d 355 (Ala. 1977). Additionally, implied consent may be inferred when the opposing party himself offered evidence relative to the issue. Id. at 358. Further, assuming that the opposing party did object to the evidence on a non-pleaded issue, he must also show "that he would be actually prejudiced in maintaining his action or defense on the merits by the admission of the evidence." Hawk, 342 So.2d at 358.
We also note that a determination "as to whether [an] issue has been tried by express or implied consent under Rule 15(b) is a matter for the trial court's sound discretion, which will not be altered on appeal absent an abuse [of that discretion]."McCollum v. Reeves, 521 So.2d 13 (Ala. 1987). Furthermore, "whether pleadings are deemed to be amended in order to conform to the evidence presented is also a matter within the discretion of the trial court," and a decision in that regard will not be disturbed on appeal absent an abuse of discretion. Id. at 16-17.
The above quoted portion of the record convinces us that the trial court deemed Adams's complaint to be amended to conform to the evidence. We have also examined the record to find the initial introduction of evidence supporting Adams's contention of suppression, and have found no objection by the defense to this evidence. Thus, the suppression issue was tried by the implied consent of the parties, and the trial court amended the pleadings to conform to the evidence presented. Therefore, the trial court did not err in refusing to grant a JNOV or a new trial on this basis.
 B. Failure to Sufficiently Prove
Intracorp and Bradly also contend that the trial court reversibly erred in refusing to grant them a JNOV or a new trial, at least as to Adams's fraud cause of action, because, they argue, Adams failed to sufficiently prove the suppression of a material fact. This contention, of course, is merely an assault on the sufficiency of the evidence.
Initially, we note that a strong presumption of correctness attaches to a jury verdict in Alabama, if the verdict passes the "sufficiency test" presented by motions for directed verdict and JNOV. Christiansen v. Hall, 567 So.2d 1338, 1341
(Ala. 1990); Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160
(Ala. 1988). This presumption of correctness is further strengthened by a trial court's denial of a motion for new trial. Christiansen, 567 So.2d at 1341. Denying, and to a more limited extent granting, a motion for new trial is within the sound discretion of the trial court. See, Jawad v. Granade,497 So.2d 471, 477 (Ala. 1986). This Court will not reverse a judgment based on a jury verdict on a sufficiency of the evidence basis unless the evidence, when viewed in a light most favorable to the nonmovant, shows that the verdict was "plainly and palpably wrong and unjust." Christiansen, 567 So.2d at 1341. Based on our review of the record, we cannot say that the verdict was plainly and palpably wrong or unjust.
This Court has stated that a cause of action for suppression of a material fact under § 6-5-102, Ala. Code 1975, has four elements: "(1) a duty to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act [or to refrain from acting]; and (4) action [or a refraining to act in a way that the plaintiff would otherwise act] by the plaintiff to his injury."Wilson v. Brown, 496 So.2d 756, 759 (Ala. 1986).
We conclude that Adams presented substantial evidence[2] of each of these elements. First, as to the duty to disclose, §6-5-102, Ala. Code 1975, states, in pertinent part, "The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstancesof the case." (Emphasis added.) Adams does not argue that a confidential *Page 1215 
relationship existed, but rather that the particular circumstances of the case imposed an obligation to disclose.
This Court has stated that "A duty to speak depends upon the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances."Deupree v. Ruffino, 505 So.2d 1218, 1222 (Ala. 1987), quotingAmerican Bonding Co. v. Fourth National Bank of Montgomery,206 Ala. 639, 641, 91 So. 480 (1921). Further, this Court has held that a case-by-case, flexible approach must be used in determining if a duty to disclose exists under the particular circumstances of the case. Jim Short Ford Sales, Inc. v.Washington, 384 So.2d 83 (Ala. 1980).
In this case, Adams presented evidence that Intracorp policy required a rehabilitation specialist to fully disclose to a client (injured party) the extent of Intracorp's relationship with that person. Specifically, Adams points to three portions of Intracorp's Rehabilitation Specialist Resource Guide
(hereinafter, "Resource Guide"), Intracorp's written policy statement and manual for its rehabilitation specialists. One portion of the Resource Guide states, "[W]e are obligated to state clearly what our role will be in the assessment and rehabilitation process. . . . This is especially important when there is no intent to provide rehabilitation services beyond a file review, client interview, or assessment." Resource Guide at 9.2. Another portion of the Resource Guide states, "The client should always be aware of the limits of our relationship. We are obligated to provide full and complete disclosure of our involvement." Resource Guide at 9.2. Further, the Resource Guide states:
 "Rehabilitation counselors who provide services at the request of a third party will clarify the nature of their relationships to all involved parties. Rehabilitation counselors employed by third parties as case consultants or expert witnesses, where there is no pretense or intent to provide rehabilitation counseling services directly to clients beyond file review, initial interview and/or assessment, will clearly define, through written or oral means, the limits of their relationship."
Resource Guide at 9.13.
Thus, it was Intracorp's stated policy to fully inform clients of its relationship with them and of any limitations in the services that Intracorp could render to them. Intracorp, then, by its own business policy, had an obligation to disclose to Adams the limited nature of its undertaking for CIGNA. That is, because of the particular circumstances of this case, especially the stated company policy, we conclude that Intracorp and Bradly had a duty to disclose to Adams that CIGNA had hired them to perform only an initial evaluation. Stated differently, we conclude that Intracorp and Bradly had a duty to disclose to Adams that they had not been hired by CIGNA to perform the full range of services discussed in the services brochure provided to Adams in response to his query about the kinds of services Intracorp planned to provide him.
Second, we find that Adams presented substantial evidence as to the nondisclosure or concealment element also. In answer to Alexander's written and specific inquiry about the types of services Intracorp would provide for Adams, Bradly referenced Intracorp's brochure (reprinted above) which outlined a plethora of rehabilitation services. If Adams was not to receive these services, it was incumbent on Intracorp and Bradly to specifically inform Adams to this effect. Furthermore, at the evaluation session, Adams specifically asked Bradly whose interest she served, and although she responded by saying that she served the insurance company's interest, she also stated that after this initial meeting she would serve his interest. When Adams asked her this question, Bradly had an opportunity to fully disclose to Adams the limited nature of Intracorp's undertaking. The evidence is clear that she did not do so.
Third, as to inducement of the plaintiff to act or refrain from acting, it is undisputed that Adams did not seek other rehabilitation services, even governmentally provided services. We conclude that Adams's inaction was reasonable under the circumstances and particular facts of this case. *Page 1216 
Fourth, and finally, as to injury, there was evidence that Adams was delayed in returning to the workforce because he was not rehabilitated sooner. In short, Adams was not informed of Intracorp's limited undertaking, he specifically requested to know what type of services Intracorp proposed to provide, he was referred to Intracorp's brochure, and Intracorp and Bradly failed to inform him that those services would not be provided. We conclude that Adams was justified in relying on Bradly's answer to his inquiry, and that he was injured by failing to act as he would have acted absent Intracorp and Bradly's failure to disclose.
Based on the foregoing, we affirm the judgment entered on the jury's verdict.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] There was testimony at trial to the effect that "medical management" and a "full initial evaluation" were synonymous terms.
[2] "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989); see Ala. Code 1975, §12-21-12.