663 So.2d 892 (1995)
HOSEA O. WEAVER & SONS, INC.
v.
Louise Gordon TOWNER, et al.
No. 1930529.
Supreme Court of Alabama.
February 24, 1995.
Opinion Overruling Application for Rehearing May 12, 1995.
Rehearing Denied June 23, 1995.
*893 Philip H. Partridge and Thomas H. Nolan, Jr. of Brown, Hudgens, P.C., Mobile, for appellant.
Robert J. Hedge and R. Jeffrey Perloff of Jackson, Taylor and Martino, P.C., Mobile, for appellees.
MADDOX, Justice.
This appeal involves a question relating to the burden of proof when the "loaned servant" doctrine is involved. The specific issues are: 1) whether the trial court erred in denying the defendant's motion for a directed verdict and 2) whether the trial court erred in granting the plaintiffs' motion for new trial when it determined that it had failed to properly charge the jury that the defendant had the burden of proving its affirmative defense, the loaned servant doctrine. The defendant appeals from the trial court's order denying the defendant's motion for a directed verdict and the trial court's order granting the plaintiffs' motion for a new trial. We affirm.
Many of the basic facts are contained in our opinion written on an earlier appeal in this case. See, Towner v. Hosea O. Weaver & Sons, Inc., 614 So.2d 1020 (Ala.1993). Brasfield & Gorrie General Contractors, Inc. (hereinafter "B & G"), contracted to build a water filtration plant in Semmes, Alabama. After completing the Semmes project, B & G sent its heavy machinery to other job sites. Thereafter, Anthony Jones, a B & G supervisor, noticed that a pipe at the Semmes site needed re-excavation and repair. Jones telephoned the president of Hosea O. Weaver & Sons, Inc. (hereinafter "Hosea Weaver"), a local contracting company, and requested the use of a backhoe and an excavator for the repair job. On May 22, 1990, after reporting to work at Hosea Weaver, the worker, Ladon Hilliard, was taken by William Morgan, a Hosea Weaver employee, to the Semmes site and introduced to Anthony Jones. Jones instructed Hilliard to remove the dirt from around the leaking pipe, on both sides. Hilliard excavated the pipe, and Freddie Towner and another employee of B & G entered the trench to repair the leak. A wall of dirt collapsed, killing Towner.
At the first trial, the plaintiffs, Towner's wife and son, alleged that Hosea Weaver had negligently performed excavation at the job site by and through its employee Hilliard. *894 See Towner v. Hosea O. Weaver & Sons, 614 So.2d 1020 (Ala.1993). The jury returned a verdict for Hosea Weaver and the court entered a judgment on that verdict. Id. This Court reversed the judgment and remanded the case for a new trial, because the trial court had erred in failing to give the plaintiff's proposed jury charge that fully explained the right-of-control test used to determine whether Hilliard was acting as an employee of B & G or as an employee of Hosea Weaver. Id. In the second trial, the jury again returned a verdict for Hosea Weaver; however, the trial court granted the plaintiffs' motion for a new trial, holding that it had erred in failing to instruct the jury that the loaned servant doctrine was an affirmative defense, and, thus, that Hosea Weaver had the burden of proving that Hilliard was a loaned servant of B & G. Hosea Weaver appeals.

I
Hosea Weaver says that the trial court should not have reached the issue of whether to grant the plaintiffs' motion for a new trial; it argues that it was entitled to a directed verdict because, it says, the plaintiffs failed to establish that Hilliard owed a legal duty to determine, before Towner was allowed to work in the hole, the required angle of slope of the excavation walls or the need for shoring or safety boxes. Hosea Weaver's primary basis for this argument is the testimony of the plaintiffs' expert witness Salvador Boscareno, who was employed as a compliance officer with the Occupational Safety and Health Administration within the Department of Labor. (R.T. 128.) As an OSHA compliance officer, Boscareno testified, part of his job was to assure that businesses were complying with OSHA rules and regulations. Hosea Weaver asked Boscareno who would be considered the responsible or "competent person" at the accident site according to the OSHA rules and regulations. Boscareno responded by defining "competent person" according to the OSHA rules and regulations as a person who is able to identify hazards associated with excavation and trenching and is able to determine whether an unsafe condition exists. (R.T. 146.) The full definition of "competent person," as stated in the rules and regulations reads as follows:
"(b) Definitions applicable to this subpart.
"Competent person means one who is capable of identifying existing and predictable hazards in the surroundings, or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them."
29 C.F.R. § 1926.650 (1994).
A motion for directed verdict is a procedural device by which one party tests the sufficiency of the other party's evidence. See, Rule 50(a), Ala.R.Civ.P.; Alabama Power Co. v. Williams, 570 So.2d 589 (Ala.1990); John R. Cowley & Bros., Inc. v. Brown, 569 So.2d 375, 376 (Ala.1990); J. Hoffman & S. Guinn, Alabama Civil Procedure § 8.37 (1990). The ultimate question, of course, is whether the nonmovant has presented sufficient evidence to allow submission of the case or issue to the jury for a factual resolution. Hoffman & Guin, supra, at § 8.37.
The standard of review applicable to a motion for directed verdict is the "substantial evidence rule." See, § 12-21-12(a), Ala.Code 1975; Koch v. State Farm Fire & Cas. Co., 565 So.2d 226, 228 (Ala.1990). To withstand a motion for a directed verdict, a party must have presented "substantial evidence" supporting each element of his cause of action or defense. Id. "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12. Also, we note that in reviewing a ruling on a motion for a directed verdict, we must view all the evidence in a light most favorable to the nonmovant and must entertain such reasonable inferences from the evidence as the jury would have been free to draw. Williams v. Allstate Insurance Co., 591 So.2d 38 (Ala.1991); Bailey v. Avera, 560 So.2d 1038 (Ala.1990).
Hosea Weaver contends that the evidence affirmatively established that Jones was the *895 "competent person" at the sitethat Jones had the authority and responsibility to determine the safety of the excavation before the workers entered into the hole; therefore, Hosea Weaver argues, the trial court erred in not granting its directed verdict motion. Boscareno, on cross-examination, agreed with Hosea Weaver that Jones was the "competent person" at the site, and that Jones identified himself as such on the day of the accident when Boscareno conducted his investigation. Jones testified that he had authority to move the fence in order to increase the slope or to employ safety trenches or wall bracing, but that he decided that the excavation was safe without those changes.
On redirect examination, Boscareno testified that Hilliard could also be considered the competent person. (R.T. 175.) Boscareno testified that Hilliard could be considered a "competent person" because the standards require that he, as an experienced backhoe operator, exercise diligence when using his equipment and that he stop the job at any time he feels that he or other people are in danger because of his use of the equipment. (R.T. 176.)
Hosea Weaver argues that Boscareno's testimony on this question does not provide a basis for finding Hilliard to be the "competent person," because, it argues, his testimony amounts to nothing more than speculation, conjecture, or guess; such evidence is insufficient to warrant submission of a case to the jury. Turner v. Azalea Box Co., 508 So.2d 253, 254 (Ala.1987); Thompson v. Lee, 439 So.2d 113 (Ala.1983). The plaintiffs argue that Boscareno's testimony on redirect examination was sufficient evidence to establish that Hilliard had a duty, and that there was a triable issue of fact as to whether Hilliard could be considered the competent person at the site. We agree with the plaintiffs. Boscareno's testimony on cross-examination and redirect examination as to who he considered to be the competent person at the site can reasonably be based upon his experience and his reliance on the definition of "competent person" in the OSHA rules and regulations. In reviewing this testimony in a light most favorable to the non-movants, as we are required to do, we conclude the issue of who was the competent person at the site should have been presented to the jury. Thus, the trial court correctly denied Hosea Weaver's motion for a directed verdict.

II
The second issue is whether the trial court erred in granting the plaintiffs' motion for a new trial after determining that it had erred in failing to charge the jury that Hosea Weaver had the burden of proving the applicability of the loaned servant doctrine. After reviewing the trial transcript excerpts made available to it upon submission of the plaintiffs' motion, as well as the applicable law, the trial court concluded that it had not instructed the jurors fully and correctly. The trial court exercised its discretion to grant the plaintiffs a new trial.
We must first examine the applicable standard of review for determining whether the trial judge erred in ordering a new trial.
"`It is well established that a ruling on a motion for a new trial rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error.'"
Kane v. Edward J. Woerner & Sons, Inc., 543 So.2d 693, 694 (Ala.1989), quoting Hill v. Sherwood, 488 So.2d 1357 (Ala.1986).
The plaintiffs argue that the "loaned servant" doctrine is an affirmative defense. Ala. R.Civ.P. 8(c). The plaintiffs do not dispute the trial court's charge that they had the burden of proving that Hilliard was, in fact, a regular employee of Hosea Weaver at the time of the accident; however, they argue that if Hosea Weaver claimed that Hilliard was a loaned servant of B & G, then Hosea Weaver had the burden of proving this affirmative defense.
The plaintiffs further argue that Hosea Weaver's contention that it did not raise the loaned servant doctrine as a defense in this case is simply without merit. Although Hosea Weaver did not specially plead the loaned servant doctrine as an affirmative defense, *896 the plaintiffs argue that Hosea Weaver's primary defense was premised on Hosea Weaver's contention that Hilliard was a loaned servant of B & G, and the plaintiffs say Hosea Weaver contended it was therefore immune from liability, under the Workers' Compensation Act.
The plaintiffs argue that the "loaned servant" defense, although not specially pleaded, was made an issue in the case. They cite the following portions of the trial court's oral charge instructing the jury on Hosea Weaver's loaned servant doctrine defense, to support their contention:
"The law says that you cannot sue your employer or fellow co-employeefellow employee or co-workerfor negligence or wrongful death. Those claims are handled in a separate area of the law. So, if at the time of the alleged negligence of Ladon Hilliard he was, in fact, an employee of Brasfield and Gorrie as is defined by the law, then your verdict must be in favor of the Defendant, Hosea Weaver and Sons." (R.T. 377-378.)

________________
"What the Defendants are saying [is], look, Brasfield and Gorrie contracted for us to send them what we called a loaned employee and equipment. And at that time, we loaned them or hired to them our employee and equipment. Then Ladon Hilliard became a loaned servant. And he was, in fact, at the time of this incident an employee of Brasfield and Gorrie. That's what the Defendants are saying." (R.T. 380.)
The plaintiffs argue that Hosea Weaver's representations that it did not rely upon the immunity provided by the loaned servant doctrine is contradicted by the record. They further say that, in view of the facts in the record, including the instruction given to the jury by the trial court, the trial court correctly granted the new trial because it had failed to charge the jury correctly on the burden of proof regarding the loaned servant defense.
Hosea Weaver argues that the trial court instructed the jury on its own initiative in an attempt to bring clarity to inadvertent dicta in this Court's earlier opinion, and Hosea Weaver argues that the loaned servant doctrine is not properly before us because it did not amend its pleadings to specifically raise that defense.
Hosea Weaver argues that because the plaintiffs sought to impose vicarious liability on Hosea Weaver for the alleged negligence of Hilliard, the burden of proof was on the plaintiffs to prove the existence of the agency/employment relationship and the scope of the relationship. Hosea Weaver further argues that it would be inconsistent and confusing to also instruct the jury that the burden was on Hosea Weaver to prove that Hilliard was not acting within the line and scope of his employment or authority with Hosea Weaver but rather was employed by another at the time of the accident.
We agree with the plaintiffs that "injury by fellow servant" is an affirmative defense according to Alabama law; see Rule 8(c), Ala.R.Civ.P. Rule 8(c) provides that affirmative defenses "shall" be raised in responsive pleadings. There is no dispute that Hosea Weaver's answer was never amended to include an affirmative defense that squarely presented its contention that Hilliard had been loaned to B & G. Nevertheless, the issue was raised at trial, and when the trial judge gave the jury instructions quoted above, Hosea Weaver did not object.
Rule 15(b), Ala.R.Civ.P., provides:
"When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."
It is well settled law in Alabama that implied consent of the parties can be found when an opposing party fails to object to the introduction of evidence raising the disputed issue initially. International Rehabilitation Associates Inc. v. Adams, 613 So.2d 1207, 1213 (Ala.1993); Bischoff v. Thomasson, 400 So.2d 359 (Ala.1981). See McDuffie v. Hooper, *897 294 Ala. 293, 315 So.2d 573 (1975); Rafield v. Johnson, 294 Ala. 235, 314 So.2d 695 (1975). As noted in the Committee Comments to Rule 15, Ala.R.Civ.P., "Under the rule where evidence is introduced or an issue raised with the express consent of the other party, or without objection from him, the pleadings `shall' be deemed amended to conform to such evidence."
It appears to us from a review of the record that the trial judge concluded that the parties had impliedly consented to try the issue of whether Hilliard was a loaned servant, and concluded that the trial of that issue presented an affirmative defense, because he determined that the plaintiffs were entitled to a new trial because he had failed to instruct the jury on the burden of proof involving a defense raised by Hosea Weaver. We have held that "a determination `as to whether [an] issue has been tried by express or implied consent under Rule 15(b) is a matter for the trial court's sound discretion, which will not be altered on appeal absent an abuse [of that discretion].'" International Rehabilitation Associates, Inc. v. Adams, 613 So.2d 1207, 1214 (Ala.1993); McCollum v. Reeves, 521 So.2d 13 (Ala.1987).
We have thoroughly reviewed the record and the applicable law, and we have applied the law that "a ruling on a motion for a new trial rests within the sound discretion of the trial judge" and that "[t]he exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error." Kane, supra, 543 So.2d at 694.
The record supports the trial judge's decision to grant a new trial, because the trial judge failed to instruct the jury that the loaned servant doctrine is an affirmative defense and that the defendant has the burden of proof on such a defense. It is a basic tenet of Alabama law that "a party is entitled to have his theory of the case, made by the pleadings and issues, presented to the jury by the proper instructions, ... and [that] the [trial] court's failure to give those instructions is reversible error." Alabama Farm Bureau Mut. Ins. Service, Inc. v. Jericho Plantation, Inc., 481 So.2d 343, 344 (Ala. 1985).
Although we affirm the trial judge's order granting a new trial, we should not be understood as encouraging the trial of issues coming before the court on a party's implied consent. Rule 8(c) provides that affirmative defenses "shall" be raised in responsive pleadings, and, although the "loaned servant" defense is not listed specifically in Rule 8(c),[1] a party relying on such a defense should affirmatively plead it, because Rule 8(c) requires that "any other matter constituting an avoidance or affirmative defense" be raised in a responsive pleading. Whether Hilliard was working as an agent of Hosea Weaver or as an agent of B & G was one of the paramount issues in this case. It should have been specially pleaded or included in a pretrial order so that the trial could have been conducted accordingly.
Because two juries have found, based on substantially the same evidence, that Hosea Weaver should not be held liable to the plaintiffs, we were almost persuaded that the trial judge abused his discretion in granting the plaintiffs another opportunity to try their case, but we could not conclude that the trial judge was plainly and palpably wrong in concluding that had this jury been properly instructed the result might have been different. We affirm the new trial order, but we strongly suggest that at the new trial the issues the jury is to decide should be settled upon before the trial begins.
AFFIRMED.
*898 SHORES, HOUSTON, COOK, and BUTTS, JJ., concur.
KENNEDY and INGRAM, JJ., concur in the result.

On Application for Rehearing
MADDOX, Justice.
On application for rehearing, Hosea Weaver argues that the original opinion of this Court contained "certain erroneous or mistaken factual statements which, when corrected, should result in a different result." We have examined that contention and in this extension of the opinion, we address four arguments made on application for rehearing, but we do not change the result we initially reached.[1]
Hosea Weaver does not argue that this Court incorrectly upheld the trial court's denial of its motion for a directed verdict, but strongly suggests that this Court's holding is incorrect regarding the trial court's order granting the plaintiffs a new trial on the ground that the jury should have been instructed properly on the "loaned servant" doctrine.
Hosea Weaver makes the following arguments: (1) This Court should reconsider the holding that the loaned servant doctrine is an affirmative defense; (2) It is fundamentally unfair and unjust to apply retrospectively the newly announced rule that the loaned servant doctrine is an affirmative defense for which the defendant bears the burden of proof; (3) The trial court's order granting a new trial on a purely legal issue, as to a jury instruction question, is entitled to a lower standard of review under the special circumstances of this case; (4) If the case is required to be retried, the trial court will be without guidance as to how to instruct the jury on the burden of proof. We will address each of these arguments separately.
Hosea Weaver argues that this Court should reconsider the holding that the loaned servant doctrine is an affirmative defense. We have carefully reviewed Hosea Weaver's argument on this issue, which is stated in its brief as follows:
"Plaintiff has always had the burden of proving the existence of the employment relationship and that the act was done within the scope of that relationship, which means that the negligent actor was acting under the control or right of control of the defendant at the time of the alleged negligence. All of the cases relied upon by Hosea Weaver discussing the loaned servant doctrine concerning the burden of proof under respondeat superior hold that proving the negligent actor was under the control or right of control of the defendant is part of the plaintiff's burden under respondeat superior. Since proving the existence of the employment relationship and that the act was done within the scope of the defendant's employment is part of the plaintiff's required burden of proof, Hosea Weaver maintains that it will be impossible and confusing to now instruct the jury that Hosea Weaver has the burden of proving that Hilliard was not within its control or right of control at the time of the accident but rather was under the control of another person at that time.
"The opinion of the Court offers no suggestion as to how the jury is to be charged on this division of the burden of proof. Hosea Weaver contends that it will be confusing, if not impossible, to charge the jury. Hosea Weaver asks the Court to reconsider its holding that the common law loaned servant doctrine, in the context of this type of case, is an affirmative defense *899 for which the defendant bears the burden of proof."
We have carefully considered Hosea Weaver's argument and we decline to change our holding.
The next argument we address is that we should make this holding that the loaned servant doctrine is an affirmative defense prospective. Unquestionably, the loaned servant defense was a prominent issue in this case. Hosea Weaver, in its brief on application for rehearing, states that it "clearly stated and maintained that its defense in this case was that Hilliard was not acting as its servant or employee at the time of the alleged negligent act but was, rather, under the loaned servant doctrine, acting as the employee and under the control of Brasfield & Gorrie at the time of the alleged negligence." Whether the loaned servant doctrine defense was presented is not the question; the question is whether the plaintiffs were entitled to have the jury instructed that the loaned servant defense was an affirmative defense and that the defendant Hosea Weaver had the burden of proof.
The trial judge, in granting a new trial, determined that he had erred in refusing to instruct the jury that the defendant had the burden of proving that Hilliard was a loaned servant; therefore, he decided in favor of the plaintiffs on the issue. Even though this Court, insofar as we can ascertain, has never before held that the loaned servant doctrine is an affirmative defense, we believe that the holding should nevertheless be applied quasi-prospectively.
Our decision to apply the holding quasi-prospectively is based on the fact that reliance is an important variable that must be appraised in every case presenting questions of prospectivity, as this one does. Prospective Application of Judicial Decisions, 33 Ala.L.Rev. 463, 473 (1982).
Quasi-prospective application of this holding, like prospective overruling of a prior precedent,[2] affords relief to the instant parties, and it rewards the prevailing party on the appeal, thereby providing "an incentive for litigants to challenge existing rules of law that are in need of reform." 33 Ala.L.Rev. at 473.
In applying this holding quasi-prospectively, we have considered the circumstances of this case and the fact that the issue whether the loaned servant doctrine was an affirmative defense was argued by both parties extensively before the trial judge, implicitly and explicitly. In fact, on application for rehearing, Hosea Weaver, in its brief, shows how extensively the loaned servant defense permeated this trial; it says: "Hosea Weaver has always acknowledged that the common law loaned servant doctrine was its defense at trial," and "the loaned servant doctrine was the very basis of Hosea Weaver's defense at trial, and it was the basis of Hosea Weaver's defense at trial, and it was the basis of Hosea Weaver's requested jury instructions." Hosea Weaver argues that it "has never represented in any court, this Court or the trial court, that it was not relying on the loaned servant doctrine." Although Hosea Weaver ultimately lost its argument on whether the plaintiffs had the right to have the jury instructed on the burden of proof, that the issue was sufficiently presented both in the trial court and in this Court cannot be seriously debated.
In our original opinion, we noted that Rule 8(c), Ala.R.Civ.P., provides that affirmative defenses "shall" be raised in responsive pleadings, and we held that although the "loaned servant" defense is not listed specifically in Rule 8(c), a party relying on such a defense should plead it, because Rule 8(c) requires that "any other matter constituting *900 an avoidance or affirmative defense" be raised in a responsive pleading. Although Hosea Weaver did not specifically plead the loaned servant doctrine as an affirmative defense, it is clear that it raised that defense.
The trial judge reviewed the evidence and concluded that the arguments made by the parties warranted a reversal of his decision not to instruct the jury that the loaned servant doctrine was an affirmative defense and that the defendant had the burden of proof. We affirmed. We decline to change that holding.
We now address the argument that we should apply a less deferential standard of review in regard to the trial judge's order granting a new trial. Trial judges are authorized to grant new trials on the ground that an error of law occurred at the trial, if the issue was properly preserved. See, Rule 59, Ala.R.Civ.P., and Ala.Code 1975, § 12-13-13(a). Hosea Weaver argues that we should apply a less deferential standard of review, but we have reexamined our holding in our original opinion on this question, and we are not persuaded that we should apply a different standard of review in this case. In Kane v. Edward J. Woerner & Sons, Inc., 543 So.2d 693, 694 (Ala.1989), cited in the original opinion, the trial judge granted a new trial because he concluded that he had erred when he reversed his initial ruling on a motion for directed verdict made at the conclusion of the plaintiff's case. In granting the new trial, the trial judge had determined that the defendant was prejudiced by his initial ruling. 543 So.2d at 694. This Court, quoting Hill v. Sherwood, 488 So.2d 1357 (Ala.1986), noted that "`a ruling on a motion for a new trial rests within the sound discretion of the trial judge'" and that "`[t]he exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error.'" Kane, supra, 543 So.2d at 694.
We now address Hosea Weaver's argument that the trial court will have no guidance on a retrial of this case. We considered giving the trial court guidance on how the jury should be instructed concerning the burden of proof; however, we believe that the trial judge is qualified to instruct the jury on these issues and will eliminate confusion if he settles upon the dispositive issues the jury is to decide before the trial begins, as recommended in our original opinion. Also, Alabama Pattern Jury Instructions: Civil contains instructions on affirmative defenses that could serve as an authoritative guide for framing proper instructions, including an instruction on the burden of proof.
Based on the foregoing, the application for rehearing is overruled.
OPINION EXTENDED; APPLICATION OVERRULED.
SHORES, HOUSTON, INGRAM, COOK, and BUTTS, JJ., concur.
NOTES
[1] Rule 8(c) provides:

"(c) Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."
[1] Hosea Weaver's main argument, on application for rehearing, is that certain statements in the opinion seemed to suggest that the Court was mistaken about the legal position it was taking, especially on the issue of the "loaned servant doctrine." On application for rehearing, Hosea Weaver says: "Contrary to the statement in the February 24, 1995, opinion, [which it quotes and emphasizes], Hosea Weaver has always argued that the `loaned servant doctrine' was part of its defense, was one of the issues submitted to the jury, and is before the Court!" Hosea Weaver also contends: "The Court has unfortunately succumbed to plaintiffs' confusion of the issues. Hosea Weaver has always acknowledged that the common law loaned servant doctrine was its defense at trial, as evidenced by its requested jury instructions, but Hosea Weaver has never at any point argued or relied upon the special and limited immunities of the Worker's Compensation Act, which are not even applicable to the facts of this case."
[2] "Quasi-prospective overruling" has been defined as follows:

"Quasi-prospective overruling, like prospectivity, protects reliance on prior rules by applying the overruling decision to acts done or transactions consummated after the effective date of the decision. Unlike prospective overruling, however, when a court overrules quasi-prospectively, it affords relief to the instant parties. The major justifications for using quasi-prospective overruling are two-fold: first, to make an announcement binding precedent rather than mere dictum; and second, to reward successful appellants and thereby provide an incentive for litigants to challenge existing rules of law that are in need of reform."
33 Ala.L.Rev. 463, 473 (1982).