325 So.2d 178

James C. JOHNSON a/k/a Jay Johnson

v.

Robert L. BOGGAN d/b/a Commercial Mortgage Investment Company.

Civ. 611, 611–X.

Court of Civil Appeals of Alabama.

Dec. 3, 1975.

Rehearing Denied Dec. 31, 1975.

J. Richard Piel, Montgomery, for appellant.

Euel A. Screws, Jr., and Howard C. Oliver, Montgomery, for appellee and cross-appellant.

HOLMES, Judge.

This is an appeal from the Circuit Court of Montgomery County. A judgment for $1,750 was entered by the learned trial judge sitting without a jury in favor of plaintiff-appellee and against defendant-appellant. From this judgment the defendant appeals. The plaintiff cross-appeals and assigns as error the insufficiency of the evidence to support the amount of the judgment.

The action is one for breach of contract and declaratory judgment. The dispositive issues on the direct appeal by the appellant are the construction to be accorded certain terms of the contract in question and whether defendant-appellant's misunderstanding as to those terms will suffice to render the contract unenforceable.

The pertinent facts as revealed by the record are as follows:

Defendant-appellant was interested in constructing an office building in downtown Montgomery, Alabama, his purpose being to lease said building to the State of Alabama.

Plaintiff-appellee is a mortgage broker. He became aware that defendant needed to secure financing for the above mentioned project, and sent to defendant the following letter dated June 26, 1974:

"Mr. Jay Johnson
464 South Court
Montgomery, Ala.

"Re: Office Building
Leased to State
11,680 sq. ft.

"Dear Mr. Johnson,

"You hereby authorize me as your agent to obtain permanent financing for you on the above referenced property. The loan is to be in the amount of $300,000 at $9\frac{3}{4}\%$ interest for 25 years, with monthly payments of $2,675. The loan will be made to you personally. The lender must approve the closing attorney.

"The loan commitment will be subject to the building being leased to the State of Alabama for 5 years at $5.75 per foot, not including utilities.

"The property in the mortgage will be that covered in the appraisal made by Ed Auerbach, May 10, 1974.

"The commitment will be subject to an MAI appraisal of the land and building indicating that the loan does not exceed a 75% ratio.

"The lender will reserve a first right of refusal, to provide you with additional financing on this property.

"The loan commitment will be good for a period of one year. Closing to take place at your request, but no sooner than Jan. 1, 1975.

"It is understood that you are to pay the usual closing costs, such as survey, abstract, title policy, attorney fees, recording fees, etc.

"Mr. Jay Johnson                    page 2

an acceptable s/j/
"If a commitment is issued in accordance with the above terms, you agree to accept said commitment within 10 days, and put up a 2% refundable deposit with the lender.

"My fee for securing the commitment will be 1% of the commitment amount. Said fee to be paid upon acceptance of the commitment.

an acceptable s/j/
"If for some reason a commitment is issued and you do not accept it, you agree to reimburse me $500 for my expenses.

an acceptable s/j/
"If a commitment is not issued within 30 days from date of acceptance of this letter, then this agreement will be null and void.

"Please indicate your acceptance of the above terms by signing below.

"Sincerely,

"/s/ Bob Boggan
"Robert L. Boggan
"President

"RLB/lbb"

Defendant's attorney subsequently contacted plaintiff by telephone and the agreement was finalized. At that time, the word "acceptable" was added in paragraphs 1, 3 and 4 of page 2 of the above letter. Plaintiff also testified that the entire paragraph 3 of page 2 was added during that negotiation.

Plaintiff then sought to procure an acceptable loan for defendant, and did in fact obtain a loan commitment from Pilot Life Insurance Co. of Greensboro, North Carolina (hereinafter referred to as "Pilot"). After receiving the loan commitment, defendant sent to Pilot the following letter of July 18, 1974:

"Pilot Life Insurance Company
Post Office Box 20727
Greensboro, North Carolina 27420
"Attention: Mr. V. E. Knox
              Vice President

"Dear Mr. Knox:
"I hereby accept the attached loan commitment dated July 10, 1974, subject to the following ammendment [sic]:

"Upon acceptance of the commitment, I enclose herewith a 1% ($3,000.00) good faith deposit. If for some reason the five (5) year lease with the State of Alabama cannot be obtained within sixty (60) days from July 22, 1974; then construction will not take place, and the commitment will be cancelled and the 1% ($3,000.00) deposit refunded to me.

"As soon as the required lease with the State is obtained (within sixty days), I will forward the balance of the good faith deposit.

"I regret having to add this condition to your commitment, but trust that you will understand, and that it will be acceptable to you.

"Sincerely yours,

"/s/ James C. Johnson
"James C. Johnson

"JJ/nk"

Pilot responded by letter dated July 24, 1974, as follows:

"CC

"Mr. Robert Boggan
Commercial Mortgage
   Investment Co.
609 South Hull Street
Montgomery, Alabama 36104

"Dear Mr. Johnson:

"James C. Johnson and
wife, Lydia R. Johnson
Proposed Office Building
302 and 316 Cramer Street
and 1021 South Hull Street
Montgomery, Alabama

"Please consider this letter as an amendment to our commitment letter dated July 10, 1974 as we agree that if for some reason the five year lease with the State of Alabama cannot be obtained within sixty (60) days from July 22, 1974; then the construction will not take place and the commitment can be cancelled and the $9,000 deposit refunded to you.

"If this amendment meets with your approval, please return the executed copy of this letter to us by August 2, 1974 otherwise it will become null and void without further notice.

"You will notice that we require the full deposit as requested in our commitment letter dated July 10, 1974, and the $3,000 that you offered with your letter of July 18, 1974 was not sufficient.

"Sincerely Yours,

"/s/ V. E. Knox
"V. E. Knox
"Second Vice President

"Accepted by:

"/s/ James C. Johnson
               7/30/74
                (Date)
"
                                    
           Lydia R. Johnson

                (Date)

"VEK:mte"

Defendant made his final acceptance of the Pilot loan commitment by complying with the terms of the July 24 letter.

It later developed that the lease with the State of Alabama could not be obtained. The loan commitment with Pilot was thus cancelled and defendant's deposit was refunded. Defendant refused to pay plaintiff the one percent commission which plaintiff contends is owed him by the terms of the June 26 letter, and this litigation ensued.

It is the task of this court to decide if defendant's promise to pay plaintiff a commission is subject to the condition that a lease with the State of Alabama be obtained.

We initially note that the brokerage contract between plaintiff and defendant and the loan commitment between plaintiff and Pilot are two separate and distinct agreements.

The letter of June 26, as amended, embodies the entire contract between plaintiff and defendant. To this court, there is no ambiguity in its provisions. The contract provides that the commitment is to be subject to the condition that the lease with the State of Alabama be obtained. However, defendant's obligation to pay the commission is not made so contingent. Defendant's duty to pay is to arise when he

accepts the commitment, with its attached condition. The condition is solely referable to the loan commitment between defendant and Pilot, and has no application to the instant contract between plaintiff and defendant.

Put another way, defendant was to pay the commission upon acceptance of the commitment. Defendant himself required that the condition be attached to the commitment in order for him to in fact accept it. It is therefore difficult to ascertain how defendant can contend that the condition has affected his duty to pay plaintiff-broker. Simply stated, the broker's contractual duty was fulfilled when the money to be loaned was found and such was accepted by the borrower.

As appellee apprises us in brief, the instant contractual arrangement is expressive of the general law concerning brokers of various types. 12 Am.Jur.2d *Brokers* § 194.

We further note that the series of writings between plaintiff, defendant, and Pilot unequivocally indicates that it was the commitment or actual transferal of the money rather than defendant's acceptance thereof which was made conditional.

■ Counsel for defendant contends that no enforceable contract exists, since defendant erroneously believed that his duty to pay the commission was subject to the above mentioned condition. However, in the absence of mistake, fraud, or ambiguity, the existence *vel non* of a contract is determined by reference to the reasonable meaning of the parties' external and objective manifestations of mutual assent, rather than by their uncommunicated beliefs. *Williston on Contracts,* 3rd ed., §§ 22, 1536; 17 C.J.S. Contracts § 32; 17 Am.Jur.2d *Contracts* §§ 18, 19, 21; 9 Ala. Dig. *Evidence,* ☞397(1), 461(1), and cases cited thereunder. Any mistake here was solely due to defendant's misunderstanding of the contractual provisions, and as such

is an insufficient basis upon which to predicate relief from his obligations under that contract. 17 Am.Jur.2d *Contracts* §§ 21, 146, 148; *Ex parte Perusini Const. Co.,* 242 Ala. 632, 7 So.2d 576; *Board of Water and Sewer Com'rs of Mobile v. Spriggs,* 274 Ala. 155, 146 So.2d 872.

■ Defendant finally argues that the loan commitment was never accepted because plaintiff's wife appeared to be required to sign the document and did not do so. However, this issue cannot be considered as it is raised for the first time on this appeal. 2 Ala.Dig. *Appeal & Error,* ☞169, and cases cited thereunder. Furthermore, testimony was adduced at trial to the effect that Pilot considered defendant's signature alone to be sufficient.

We accordingly hold that defendant is bound by the terms of the written contract, in that when he accepted the loan commitment he became obligated to pay plaintiff a commission of one percent thereof.

■ As noted earlier, the plaintiff cross-assigns error in that there is insufficient evidence to support the trial court's entry of judgment in the amount of $1,750. We agree. The only evidence before the court pertaining to the amount of defendant's indebtedness to plaintiff was the written contract, which fixed that indebtedness at one percent of the loan commitment, or $3,000.

We therefore find the defendant-appellant's assignments of error are without merit. The plaintiff-cross-appellant's assignment of error is well founded.

We therefore reverse and remand for entry of judgment not inconsistent with this opinion.

Reversed and remanded with instructions.

WRIGHT, P. J., and BRADLEY, J., concur.