HOLMES, Judge.
The plaintiff sued the defendant, claiming the defendant owed the plaintiff a broker’s fee. The circuit court, sitting without a jury, found for the defendant and plaintiff appeals.
The dispositive issue on appeal is whether the evidence before the trial court required a finding that the broker was entitled to a fee. We hold that the evidence does require such a finding and reverse and remand.
The pertinent facts are without any significant dispute and are as follows: The plaintiff is in the commercial loan brokerage business. The defendant hired the plaintiff to assist defendant in obtaining financing for a construction project. The plaintiff submitted a loan package to a lending institution. The lending institution made a loan commitment to defendant. This loan commitment was accepted, in writing, by the defendant. The loan was never in fact closed as one of the conditions could not be complied with. Specifically, the loan was not closed because the lender had conditioned its commitment on a seventeen-year lease guarantee by a specified third party. The third party’s standard lease guarantee was ten years, and, for undetermined reasons, a longer guarantee was not obtained within the time required by the lender. As a result, the lender can *1222 celed his commitment and did not extend credit to defendant.
The defendant’s position, as we perceive it, is that the agreement was that the loan must be actually “made” before the brokerage fee is due. The plaintiff contends that the fee is due and owing when the loan commitment was obtained and accepted by defendant.
The decision of this court in Johnson v. Boggan, 56 Ala.App. 668, 325 So.2d 178 (1975), a case quite similar to the instant case on its facts, is instructive in the instant appeal.
In Johnson, supra, a mortgage broker had an agreement with his client to procure a loan commitment. The broker’s fee was to be paid when the client accepted the commitment. The broker subsequently found a suitable lender, who then tendered a commitment to the client. The client accepted after imposing a condition that the commitment would be canceled if the client could not obtain a five-year lease of his proposed facility from the state. The lease could not be obtained, the commitment was canceled, and the client refused to pay the brokerage fee.
This court noted:
“[T]he brokerage contract between [the broker and the client] and the loan commitment between [the client and the lender] are two separate and distinct agreements.
“. . . The contract [between the client and the lender] provides that the commitment is to be subject to the condition that the lease with the State of Alabama be obtained. However, [the client’s] obligation to pay the [brokerage] commission is not made so contingent. [The client’s] duty to pay is to arise when he accepts the commitment, with its attached condition. The condition is solely referable to the loan commitment between [the client and the lender], and has no application to the instant contract between [the broker and the client].” 56 Ala.App. at 671-72, 325 So.2d at 181.
If the agreement between plaintiff and defendant in the instant case was that plaintiff procure a loan commitment, then the plaintiff has earned his broker’s fee, because, as previously noted, the defendant had accepted, in writing, the lender’s loan commitment with its attached conditions. As we noted in Johnson, supra, the conditions imposed on the loan commitment have no bearing on the defendant’s duty to pay the broker’s fee.
The issue before us now becomes whether the contract between plaintiff and defendant was for plaintiff to procure a loan commitment or to procure a loan. We find that it was a contract to procure a loan commitment.
The law regarding mortgage brokers and their clients may be derived by analogy from cases dealing with real estate brokers. 12 Am.Jur.2d Brokers § 194 (1964); Annot., 45 A.L.R.3d 1326 (1972).
The law in this state regarding a real estate broker’s right to his commission is that “unless the seller and the broker have agreed to the contrary the broker is entitled to receive a commission when he procures a purchaser ready, willing, and able to buy on the seller’s terms, even though the sale is never consummated. . . . ” (Emphasis supplied.) Alabama Fuel Sales Co. v. Vulcan Energy Resources Corp., Ala., 339 So.2d 1007, 1009 (1976) (and cases cited therein).
In the instant case, there was no express provision in the contract between the parties that plaintiff’s responsibilities would extend past the procuring of a loan commitment.
Plaintiff began his services for defendant under an oral contract. See Hover v. Whit-taker-Warren Agency, 56 Ala.App. 255, 321 So.2d 213 (1975) (broker-client contract need not be in writing to be valid). Our review of the record reveals no testimony that either plaintiff or defendant intended that plaintiff’s services would extend past the procurement of a commitment. In fact, it was the uncontroverted testimony of plaintiff and an agent of defendant’s would-be lender that a mortgage broker earned his fee when a commitment was procured.
*1223 It is clear to this court that the learned trial judge determined that the contract in question was that plaintiff procure a loan. This finding is apparently based on a document dated March 20, 1974, and signed by plaintiff and defendant on March 24, 1974. This document reads in part, “Broker has obtained a loan [for client].” This is the only evidence of any intent of the parties that plaintiff would be obligated to procure a completed loan transaction rather than a loan commitment. However, it is clear to this court that this document is in the nature of a receipt rather than a contract for future services. The document states that the defendant agrees to pay for “services rendered.” The document was signed two days after defendant had accepted the lender’s commitment. According to the testimony, the procurement of this commitment was the “services rendered” to which the document refers. Additionally, plaintiff neither performed any services nor was requested by defendant to perform any services after signing the document in question.
Summarizing, a broker may obligate himself by contract to ensure that the client’s loan is closed as opposed to obtaining a loan commitment. Walker v. Dorsett, 221 Ala. 623, 130 So. 380 (1930) (and cases cited therein); 12 Am.Jur.2d Brokers § 195 (1964). However, this obligation must be expressly stated. Alabama Fuel, supra; accord, Taylor v. Riley, 272 Ala. 690, 133 So.2d 869 (1961); Oates v. Lee, 222 Ala. 506, 133 So. 44 (1931). We find that no such express statement has been made in the instant case. In this instance, once defendant accepted the lender’s commitment, the brokerage fee was owed and the burden of future financial negotiations fell upon the defendant. Accordingly, the decision of the trial court is due to be reversed and remanded.
REVERSED AND REMANDED.
WRIGHT, P. J., and BRADLEY, J., concur.