PARKER, Justice.
Julie Gerstenecker appeals a judgment entered by the Jefferson Circuit Court ("the trial court") in favor of Janice Gerstenecker.
Facts and Procedural History
As of September 2014, Julie, who at that time was married to Adam Gerstenecker, Janice's son, owed approximately $78,000 on two student loans she had borrowed to fund her education. Janice testified that Julie "was upset about" "the amount of interest that she owed on her student loans" and that Janice "decided that [she] would offer [Julie] an interest-free loan to pay off those student loans." Janice testified that she had a discussion with Julie and Adam about the possibility of lending Julie the money to repay her student loans. According to Janice, Janice agreed to repay Julie's student loans and Julie agreed to repay Janice by "pay[ing] [Janice] $700 a month until [Julie and Adam's child] turned one. And then the payments would rise to $1,000." Janice testified that the terms of the agreement between her and Julie were not reduced to writing. Adam also testified at trial; his testimony supports the events as testified to by Janice.
Julie testified that she had never borrowed money from Janice and that she does not recall Janice telling her that Janice would lend her money to repay her student loans.
On September 15, 2014, Julie sent Janice an e-mail informing Janice of Julie's student-loan lenders and the amount of indebtedness she owed each of them. Julie's e-mail indicated that Julie owed Department of Education FedLoan Servicing ("FedLoan Servicing") $72,124.04 and that she owed Sallie Mae $6,319.98. On September 16, 2014, Janice mailed checks in the amount of Julie's indebtedness to FedLoan Servicing and Sallie Mae.
Janice testified that, after she repaid Julie's student loans, she received four payments from Julie on the interest-free loan Janice alleges she made to Julie. Janice testified that, on October 6, 2014, Adam gave her a check in the amount of $700 "for loan repayment." Janice testified that, on October 31, 2014, Julie gave her a check in the amount of $530. Janice explained that the amount of the October 31, 2014, *649 check was $530, instead of $700, because Julie and Adam had bought Janice and her husband a sound bar for their television. The cost of the sound bar was deducted from the $700, leaving $530. Julie testified that she had no recollection or explanation as to why she wrote the October 31, 2014, check to Janice. Janice testified that, on November 22, 2014, she received a check in the amount of $700 "for Julie's repayment of the loan." Janice testified that Julie gave her a check on December 29, 2014, in the amount of $227. Janice explained that the amount of the December 29, 2014, check was $227, instead of $700, because Janice reimbursed Julie for items Julie had purchased on Janice's behalf in the amount of $473. Julie testified that she had no recollection or explanation as to why she wrote the December 29, 2014, check to Janice. Adam testified that each of the checks were given to Janice for repayment of the loan Janice made to Julie. Janice testified that, since receiving the December 29, 2014, check, she has not received any further payments on the loan from Julie.
On January 7, 2015, Julie sent Adam an e-mail discussing the terms of their pending divorce. In their e-mail exchange, Adam indicated that the monthly repayment amount under the agreement between Janice and Julie would be decreased from $700 to $500.
On December 3, 2015, Janice sued Julie alleging that Julie had breached their agreement and requesting $78,444 in damages, an amount that Janice alleged was equal to the amount of the outstanding debt Julie allegedly owed Janice.[1] On December 17, 2015, Julie filed an answer; Julie did not assert any affirmative defenses. On September 5, 2016, at 11:27 p.m., Julie filed an amended answer asserting the Statute of Frauds as an affirmative defense. On the next day, September 6, 2016, the trial court conducted a bench trial.
On September 13, 2016, the trial court entered an order in favor of Janice. The trial court essentially held that Julie had waived the Statute of Frauds affirmative defense by failing to plead it in her initial response. The trial court also held that, even if Julie had not waived the Statute of Frauds affirmative defense, the Statute of Frauds was not applicable "because the evidence submitted at trial showed that, without dispute, the contract made the subject of this lawsuit was no longer executory because [Janice] had fully performed her part of the bargain." The trial court further held that Janice had "proven her case," and it entered a judgment against Julie "in the amount of $75,644.00 (the outstanding balance testified to without dispute)."
Standard of Review
"Because the trial court heard ore tenus evidence during the bench trial, the ore tenus standard of review applies. Our ore tenus standard of review is well settled. ' "When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error." ' Smith v. Muchia, 854 So.2d 85, 92 (Ala. 2003) (quoting Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala. 1996) ).
" ' "The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses."
*650 Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986). The rule applies to "disputed issues of fact," whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala. 1995). The ore tenus standard of review, succinctly stated, is as follows:
" ' "[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence." '
" Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala. 2000) (quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala. 1977) ). However, 'that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.' Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415, 417 (Ala. 1994)."
Kennedy v. Boles Invs., Inc., 53 So.3d 60, 67-68 (Ala. 2010).
Discussion
First, Julie argues that the trial court exceeded its discretion in holding that she waived the affirmative defense of the Statute of Frauds. Julie does not dispute that she failed to raise the Statute of Frauds as an affirmative defense until the eve of trial, literally at the 11th hour. Julie argues, however, that the issue of the Statute of Frauds was tried by the implied consent of the parties and that her answer was, thus, effectively amended under Rule 15(b), Ala. R. Civ. P., to assert that affirmative defense.
In Adams v. Tractor & Equipment Co., 180 So.3d 860, 867 (Ala. 2015), this Court set forth the following concerning the waiver of the affirmative defense of the Statute of Frauds:
"The Statute of Frauds is included in the list of affirmative defenses in Rule 8(c), Ala. R. Civ. P., and that rule requires that such a defense be specially pleaded. See Wallace v. Alabama Ass'n of Classified Sch. Emps., 463 So.2d 135, 136 (Ala. 1984). However, although it is generally true that a party's failure to assert an affirmative defense in its answer works as a waiver of that defense, that rule is subject to certain exceptions."
In Tounzen v. Southern United Fire Insurance Co., 701 So.2d 1148, 1150 (Ala. Civ. App. 1997), the Appeals stated that " Rule 15(b) [, Ala. R. Civ. P.,] is an exception to the rule that an affirmative defense is waived if it is not specifically pleaded. Mid-South Credit Collection v. McCleskey, 587 So.2d 1212 (Ala. Civ. App. 1991)." Rule 15(b) provides, in pertinent part:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."
This Court set forth the following concerning a trial court's discretion in determining whether a party's pleadings have been amended pursuant to Rule 15(b) :
*651 " 'We also note that a determination "as to whether [an] issue has been tried by express or implied consent under Rule 15(b) is a matter for the trial court's sound discretion, which will not be altered on appeal absent an abuse [of that discretion]." ' International Rehab. Assocs., Inc. v. Adams, 613 So.2d 1207, 1214 (Ala. 1992) (quoting McCollum v. Reeves, 521 So.2d 13, 16 (Ala. 1987) ). ' "[W]hether pleadings are deemed to be amended in order to conform to the evidence presented is also a matter within the discretion of the trial court," and a decision in that regard will not be disturbed on appeal absent an abuse of discretion.' Adams, 613 So.2d at 1214 (quoting McCollum, 521 So.2d at 16-17 )."
Ammons v. Tesker Mfg. Corp., 853 So.2d 210, 216-17 (Ala. 2002).
Julie argues that the following evidence presented by Janice demonstrate that the issue of the Statute of Frauds was tried by implied consent:
"[Janice] presented evidence at the trial of this matter to the effect that there was an oral agreement for [Janice] to pay off Julie's student loan debt of some $80,000.00 and for Julie to pay her back at the rate of $700.00 per month for a year, then to raise the payments to $1,000.00 per month until paid in full. Clearly the contract could not be performed within a year. [Janice] further acknowledged there was no writing supporting the agreement other than Julie's email to her, Julie's email to Adam, and the 4 checks. Thus, facts invoking the Statute of Frauds were admitted, not only without objection, but in fact, by [Janice] in her case in chief."
Julie's brief, at p. 19. However, Julie has not cited any authority indicating what facts are significant to the affirmative defense of the Statute of Frauds. Neither has Julie provided any analysis explaining why the above-summarized facts presented by Janice pertain solely to the issue of Julie's affirmative defense of the Statute of Frauds. Accordingly, we need not consider this argument.
"Rule 28(a)(10)[, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived. Moore v. Prudential Residential Servs. Ltd. P'ship, 849 So.2d 914, 923 (Ala. 2002) ; Arrington v. Mathis, 929 So.2d 468, 470 n. 2 (Ala. Civ. App. 2005) ; Hamm v. State, 913 So.2d 460, 486 (Ala. Crim. App. 2002). 'This is so, because " 'it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.' " ' Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala. 2007) (quoting Butler v. Town of Argo, 871 So.2d 1, 20 (Ala. 2003), quoting in turn Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala. 1994) )...."
White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala. 2008).
Moreover, even if we were to consider Julie's argument that her answer was amended pursuant to Rule 15(b), Julie has not demonstrated that the trial court exceeded its discretion in determining that Julie's answer was not so amended. Janice argues that the facts relied upon by Julie in arguing that the issue of the Statute of Frauds was tried by the implied consent of the parties were actually presented by Janice to prove the elements of her breach-of-contract claim. See Capmark Bank v. RGR, LLC, 81 So.3d 1258, 1267 (Ala. 2011) ("In order to recover on a breach-of-contract claim, a party must establish: (1) the existence of a valid contract *652 binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) damages.").
"When a party contends that an issue was tried by express or implied consent and the evidence on that issue is also relevant to the issue expressly litigated, there is nothing to indicate that a new issue was raised at trial, and the pleadings are not deemed amended under Rule 15(b)."
McCollum v. Reeves, 521 So.2d 13, 17 (Ala. 1987) (citing Wright & Miller, Federal Practice and Procedure, Civil, § 1493 (1971) ). We agree with Janice; Julie has not demonstrated that the trial court exceeded its discretion in concluding that Julie's answer was not amended by implied consent pursuant to Rule 15(b).
Julie also argues that the trial court erred in concluding that the affirmative defense of the Statute of Frauds was not applicable. However, our conclusion that the trial court did not exceed its discretion in concluding that Julie waived the affirmative defense of the Statute of Frauds pretermits consideration of that argument.
Next, Julie argues that the trial court "committed legal error in concluding there was a contract between the parties for [Julie] to repay [Janice] for paying off her student loans." Julie's brief, at p. 21. Julie argues that Janice failed to present evidence sufficient to prove mutual assent between the parties and, thus, failed to prove the existence of a contract between her and Janice. Specifically, Julie argues that "[t]here is no tangible evidence supporting the assertion that Julie intended to agree to pay [Janice] back." Id., at p. 22.
The only authority relied upon by Julie is a plurality decision by the Appeals, Mobile Attic, Inc. v. Kiddin' Around of Alabama, Inc., 72 So.3d 37 (Ala. Civ. App. 2011). Although this plurality decision has little, if any, persuasive value, the Appeals did summarize this Court's well established precedent indicating that acceptance of an offer may be demonstrated by a means other than signing a written contract:
"[I]n Denson [v. Kirkpatrick Drilling Co., 225 Ala. 473, 144 So. 86 (1932),] ... our supreme court began by explaining the general rule that, unless a contract is required by law to be in writing and signed by the parties, an offeree need not sign the contract to evince his or her mutual assent to it. Denson, 225 Ala. at 479, 144 So. at 91. The court then cautioned that ' "such an acceptance, however, to become effective as a binding contract must be positive and unambiguous." ' Id. (quoting Stephenson Brick Co. v. Bessemer Eng'g & Constr. Co., 218 Ala. 325, 326, 118 So. 570, 571 (1928), and citing 1 Williston on Contracts, pp. 127, 168, §§ 72, 90). In the context of that discussion, the court noted that '[t]his statement of the general rule precludes acceptance by mere silence and inaction, as "generally speaking an offeree has a right to make no reply to offers, and his silence and inaction cannot be construed as an assent to the offer." ' Id. (quoting 1 Williston on Contracts, p. 168, § 91).
"However, even if 'mere silence' cannot be considered an assent to an offer, this case does not involve 'mere silence.' ' "It is well settled that whether parties have entered a contract is determined by reference to the reasonable meaning of the parties' external and objective actions." ' Cook's Pest Control, Inc. v. Rebar, 852 So.2d 730, 738 (Ala. 2002) (quoting SGB Constr. Servs., Inc. v. Ray Sumlin Constr. Co., 644 So.2d 892, 895 (Ala. 1994) ). Neither the uncommunicated beliefs of a party nor any misunderstandings regarding the import of *653 particular terms prevent an objective manifestation of intent from being effective. Lilley [v. Gonzales ], 417 So.2d [161,] 163 [ (Ala. 1982) ] ; Mayo v. Andress, 373 So.2d 620, 624 (Ala. 1979) ; and Johnson v. Boggan, 325 So.2d 178, 182, 56 Ala.App. 668, 672 (Ala. Civ. App. 1975)."
72 So.3d at 44-45.
Julie argues that Janice has not presented evidence indicating that Julie positively and unambiguously accepted Janice's offer. Julie acknowledges the evidence demonstrating that she e-mailed Janice the information necessary to repay Julie's student loans and the evidence of the two checks Julie personally signed and presented to Janice. However, without citing any supporting authority, Julie simply states that "this evidence is not positive and unambiguous." Julie's brief, at p. 24.
Janice argues that she did present evidence sufficient to prove that an agreement existed between her and Julie. Janice presented evidence indicating that she and Julie met and discussed Janice's offer to loan Julie money to repay Julie's student loans. Janice also testified that she agreed to repay Julie's student loans and that Julie agreed to "pay [Janice] $700 a month until [Julie and Adam's child] turned one. And then the payments would rise to $1,000." Adam testified to the same facts. Janice presented the e-mail Julie had sent her in which Julie references a meeting she had had with Janice and, in accordance with the terms of the agreement Janice testified to, includes the details of Julie's student loans Janice had agreed to repay. Julie also included in her e-mail to Janice specific instructions on how to repay those loans. Further, Janice presented evidence indicating that Julie and Adam made four payments in accordance with the terms of the agreement.
Janice has presented evidence indicating that an agreement existed between her and Julie and evidence detailing the specific terms of the agreement. Julie provided Janice with the information necessary for Janice to perform her obligation under the agreement. After Janice satisfied her obligation under the agreement by repaying Julie's student loans, Julie then began performance of her obligation under the agreement to repay Janice. In Deeco, Inc. v. 3-M Co., 435 So.2d 1260, 1262 (Ala. 1983), this Court stated: "Conduct of one party from which the other may reasonably draw the inference of assent to an agreement is effective as acceptance. Mayo v. Andress, 373 So.2d 620, 624 (Ala. 1979)." Julie has not directed this Court's attention to any authority indicating that the trial court's conclusion that Julie's conduct indicated a positive and unambiguous acceptance of the agreement is plainly and palpably wrong.
Next, Julie argues that, even if an agreement does exist between Janice and Julie, the trial court "committed legal error in entering a judgment in the full amount provided by [Janice] where there was no testimony of an acceleration clause being part of the alleged agreement." Julie's brief, at p. 26. Julie argues that Janice presented no evidence indicating that the oral agreement between the parties included an acceleration clause and, thus, that the trial court erred in awarding Janice the entire amount of the outstanding loan, rather than only the payments Julie had missed at the time the judgment was entered against her.
In making her argument, Julie relies on Rosenfeld v. City Paper Co., 527 So.2d 704 (Ala. 1988), and Meigs v. Estate of Mobley, 134 So.3d 878 (Ala. Civ. App. 2013). In Meigs, it was undisputed that an oral contract existed between a lender and a borrower in which the lender agreed to loan *654 the borrower $50,000 and the borrower agreed to make monthly payments in a specified amount until the principal amount, plus interest, was paid in full. 134 So.3d at 879-80. There was no evidence offered indicating that the oral contract contained an acceleration clause. The borrower made payments pursuant to the terms of the oral contract for some time, but eventually stopped making payments, thereby breaching the oral contract. The lender sued, asserting breach of contract and requesting damages. It was undisputed that, at the time the lender sued the borrower, the past-due amount was less than the total amount of the outstanding debt. The trial court, however, awarded the lender the entire amount of the outstanding debt, rather than only the past-due amount. 134 So.3d at 885.
On appeal, the borrower argued, among other things, "that the oral contract did not contain an acceleration clause and that, in the absence of an acceleration clause, the trial court should have limited the judgment to the monthly payments that had accrued at the time the judgment was entered." 134 So.3d at 888. In so arguing, the borrower relied on Rosenfeld. The Appeals summarized the applicable portion of Rosenfeld:
"In Rosenfeld [v. City Paper Co., 527 So.2d 704 (Ala. 1988) ], the parties entered into a written agreement for the payment of money that did not contain an acceleration clause. In Rosenfeld, the pertinent language of the promissory note at issue read:
" ' "In the event that the relationship between [Rosenfeld/payor] and [City Paper Company/payee] terminates, regardless of the reason for such termination, the outstanding balance then due on the obligation expressed herein shall be due and payable, without interest, in five (5) equal annual installments, beginning one year from the date of the termination of the relationship of the parties." '
" 527 So.2d at 704-05.
"Apparently, Rosenfeld breached the agreement. Among other issues, the trial court entered a summary judgment in favor [of] City Paper Company based on the full amount of the note, even though only two of the five installments had become due at the time of the entry of the judgment. Our supreme court reversed the judgment as to this issue and remanded the case with instructions to the trial court to enter the judgment based on the sum of two accrued annual installments. 527 So.2d at 704. In so doing, our supreme court rejected the application of 'anticipatory breach' to unilateral contracts for the payment of money only. Id. at 705.
"In analyzing the issue, our supreme court reasoned, in part:
" 'City Paper Company agrees that the note contains no acceleration clause, and that the case law, generally speaking, supports Rosenfeld's contention that "acceleration of the maturity of unaccrued payments" is not to be read into payment contracts by implication. For a collection of the cases so holding, see 10 C.J.S., Bills & Notes § 529 at 1160 (1938)....
" '....
" '... "Anticipatory breach" has a field of operation where the nondefaulting parties remain liable for certain obligations under a bilateral contract. To require the nondefaulting party to continue the discharge of his contractual duties, in face of a clear, unequivocal repudiation of the contract by the defaulting party, is a senseless requirement that unduly penalizes the nondefaulting party.
*655 " 'The majority of jurisdictions faced with this issue have drawn the distinction and have not allowed the "anticipatory breach" doctrine to apply to unilateral contracts, particularly for the payment of money only. The "settled" rule was succinctly expressed by Justice Cardozo in Smyth v. United States, 302 U.S. 329 at 356, 58 S.Ct. 248 at 253, 82 L.Ed. 294 (1937) :
" ' "[T]he doctrine of anticipatory breach has in general no application to unilateral contracts, and particularly to such contracts for the payment of money only."
" 'Some of the cases cited above reference Professor Williston's treatise for the rationale that rejects the application of the "anticipatory breach" doctrine to installment contracts that contain no acceleration clause: "[A]llowing the promissee immediate recovery is nothing but a direct bonus to the promissee beyond what he was promised and a direct penalty to the promissor." See, for example, Mabery v. Western Casualty & Surety Co., 173 Kan. 586, 250 P.2d 824, 828-29 (1952), citing 5 Williston on Contracts § 1328 (rev. ed. 1937).
" 'Indeed, the use of the "acceleration of maturity of payment" clause is in recognition of the nonapplicability of the anticipatory breach doctrine in installment payment contracts. Once the promissee has done all there is for him to do under the contract and the promissor's obligation is confined to payment by installments as specified by the contract, the doctrine of anticipatory breach has no field of operation and will not intercede to rescue the promissee from the consequences of the absence of an acceleration clause.
" 'While City Paper Company's "judicial economy" argument has its appeal, the right of the parties to the protection of the rule of law cannot be sacrificed on the altar of judicial efficiency.'
" Rosenfeld, 527 So.2d at 705-06 (footnote omitted)."
Meigs, 134 So.3d at 888-89. The Appeals then applied the principles from Rosenfeld to the facts before it in Meigs:
"We recognize that Rosenfeld involved a written unilateral agreement for the payment of money, and the case before us involves an oral unilateral agreement for the payment of money. However, we have found no Alabama cases involving the issue whether acceleration of payments can be read into an oral unilateral agreement for the payment of money. Logically, and in fairness, the requirement that a borrower must specifically agree to the acceleration of payments in such a written agreement should apply to a borrower under an oral agreement. Therefore, we hold that the trial court erred in reading the acceleration of payments into the oral agreement before us. Accordingly, we reverse the judgment as to this issue. On remand, the trial court should determine the amount owed based on the accrued payments as of the date of the judgment and not the full amount of the outstanding loan balance."
134 So.3d at 889.
Julie's argument based on Rosenfeld and Meigs is convincing. In the present case, as in Meigs, there is no evidence indicating that the oral unilateral agreement for the payment of money between Janice and Julie contained an acceleration clause. Therefore, the trial court erred in reading the acceleration of payments into the oral agreement between Janice and Julie.
*656 Janice argues that the trial court properly awarded her the entirety of the outstanding debt based on principles of equity. Janice argues that "the trial court was forced to determine whether a contract existed, and this task, being declaratory in nature, invoked the court's equity jurisdiction." Janice's brief, at p. 26. However, Janice has not demonstrated that the trial court invoked the principles of equity in determining that an oral agreement existed between her and Julie. Instead, based on the evidence presented by Janice, the trial court determined that Janice proved that a contract existed and that Julie breached that contract. Determining the amount of damages under the contract requires no resort to equitable principles, but to the terms of the agreement. This is a purely legal action. See Simler v. Conner, 372 U.S. 221, 223, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) (noting that a breach-of-contract claim in which the amount of damages is based on the terms of the contract is "a traditionally 'legal' action. ... The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action. The questions involved are traditional common-law issues.").[2]
Conclusion
Based on the foregoing, we affirm the trial court's judgment insofar as it assessed liability against Julie for breaching the agreement she had with Janice. However, because the trial court erred in reading an acceleration-of-payments clause into the agreement between Janice and Julie, we reverse the trial court's damages award and remand this case for the trial court to determine the amount owed based on the accrued payments as of the date of the judgment and not the full amount of the outstanding loan balance.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Stuart, C.J., and Wise and Bryan, JJ., concur.
Shaw, J., concurs in the result.

Janice also asserted various equitable claims, including unjust enrichment, fraudulent inducement, moneys had and received, and breach of an implied-in-law contract.

We note that Janice, as an alternative to her breach-of-contract claim, asserted in her complaint that there was an implied contract between her and Julie, which Julie allegedly breached. This Court has stated the following concerning implied contracts:
"[A] contract implied by law or quasi contract is not a contract at all. 'A quasi contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent. ...' 1 A. Corbin, Corbin on Contracts, § 19, at 46 (1963). The purpose of imposing these contractual obligations is to bring about justice. 1 S. Williston, A Treatise on the Law of Contracts, § 3A (3d ed. 1957). Moreover, these obligations are usually based on unjust enrichment or benefit; the defendant may be required to surrender the benefit he has received or even restore the plaintiff to a former status. Williston, supra, at 15. '... As the law may impose any obligations that justice requires, the only limit in the last analysis to the category of quasi contracts is that the obligation in question more closely resemble those created by contract than those created by tort. ...' Williston, supra, at 13."
Berry v. Druid City Hosp. Bd., 333 So.2d 796, 798-99 (Ala. 1976). Janice presented evidence and argued that an actual contract existed between her and Julie. As stated above, we are convinced by Janice's argument that an actual contract exists between her and Julie. The trial court had no need to apply principles of equity to determine the existence of a contract between Janice and Julie.